**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| TAMMY BENSON,<br><br>    Plaintiff,<br><br>    v.<br><br>METROPOLITAN LIFE INSURANCE<br>COMPANY, SELECT PORTFOLIO<br>SERVICING, INC.,<br><br>    Defendants. | 4:23-CV-40177-MRG |

**GUZMAN, D.J.**

<u>**MEMORANDUM & ORDER**</u>

## I.  <u>Introduction</u>

This case arises out a mortgage dispute. Plaintiff-borrower Tammy Benson ("Benson" or "Plaintiff"), proceeding *pro se*, has sued Defendant-mortgage holder Metropolitan Life Insurance Company ("Metropolitan") and Defendant-mortgage servicer Select Portfolio Servicing, Inc. ("Select Portfolio") (collectively, the "Defendants").

The Court has, as it must, liberally construed the Complaint [ECF No. 1] and has determined that, in essence, Benson has advanced five legal claims against the Defendants.[1] These include:

---

[1] As discussed *infra*, Plaintiff's Complaint also sought a temporary restraining order that would have blocked a

(1) a challenge to the legitimacy of certain mortgage-related interest and fees; (2) a chain of title claim; (3) a Truth in Lending Act ("TILA")[2] claim; (4) a loss mitigation-based claim; and (5) a fraud-based claim.

The Defendants jointly move to dismiss [ECF No. 17] for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  For the following reasons, the Defendants' motion to dismiss [ECF No. 17] is **GRANTED**.

## II.  Jurisdiction and Applicable Substantive Law

Although none of the parties briefed the issue of jurisdiction, the Court has independently determined[3] that it has subject matter jurisdiction under 28 U.S.C. § 1331 relative to Plaintiff's TILA claim and that it has supplemental jurisdiction under 28 U.S.C. § 1367 relative to Plaintiff's other claims.[4]

---

foreclosure sale -- a request that this Court denied.  [ECF No. 20].

[2] See 15 U.S.C. § 1601, *et seq.*

[3] See, e.g., McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004) ("[i]t is black-letter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction" (citations omitted)).

[4] The Court also has diversity jurisdiction over the case under 28 U.S.C. § 1332(a) since there is complete diversity between Plaintiff and each of the Defendants [ECF No. 1 at 4-5] and because the amount-in-controversy exceeds the $75,000 threshold (i.e., at least $328,040.27 sought in compensatory damages plus $2.5 million sought in punitive damages).  [ECF No. 1 at 4]. See, e.g., Bearbones, Inc. v. Peerless Indem. Ins. Co., 936 F.3d 12, 14 (1st Cir. 2019) ("[d]iversity jurisdiction requires both

The TILA claim is governed by federal law.  See, e.g., Thompson v. HSBC Bank, USA, N.A., 850 F. Supp. 2d 269, 274 (D.D.C. 2012) ("[plaintiff's] third claim, brought under the TILA, is governed by federal law").  Massachusetts law supplies the substantive rules of decision for the lion's share[5] of Plaintiff's other claims.  Philibotte v. Nisource Corp. Servs. Co., 793 F.3d 159, 165 (1st Cir. 2015) ("[i]n 'exercising supplemental jurisdiction over a state law claim,' we apply 'state substantive law' as that law has been applied by the state's highest court" (citation omitted)).

### III. **Legal Standards**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as

---

an amount in controversy in excess of $75,000 and complete diversity of citizenship between all plaintiffs, on the one hand, and all defendants, on the other hand") (citations omitted)).

A consequence of the presence of both diversity and federal question jurisdiction is that the Court will resolve each of the claims on the merits.  If the Court only had federal question jurisdiction, it could have declined to exercise supplemental jurisdiction over the state law claims after it dismissed the TILA claim.  See, e.g., Jones v. Bank of N.Y., No. 12-11503-RWZ, 2013 U.S. Dist. LEXIS 97481, at *22 (D. Mass. July 12, 2013) (another session of this Court declining to exercise supplemental jurisdiction over remaining state law claims after it had dismissed plaintiff's federal law claims -- including a TILA-based claim).

[5] The one exception: A sub-element of Plaintiff's Count #1 (as defined *infra*) against Select Portfolio implicates a portion of the Code of Federal Regulations.

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). At the pleading stage, a plaintiff need not demonstrate that she is likely to prevail, but "her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully'" García-Catalán v. United States, 734 F.3d 100, 102-03 (1st Cir. 2013) (citation omitted). With respect to all claims of *fraud*, plaintiffs are required to "state with particularity the circumstances" that constitute the alleged fraud.  See Fed. R. Civ. P. 9(b).

When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012).  In determining whether a complaint has crossed the plausibility threshold, courts conduct a two-part, context-specific inquiry.  First, the court must separate "'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)'" García-Catalán, 734 F.3d at 103 (citation omitted).  Second, the court must determine whether the factual allegations are sufficient to support "'the reasonable inference that the defendant is liable for the misconduct alleged'" Id. (citation omitted).  Conducting this inquiry requires a court to draw on its "judicial experience and common sense." Iqbal, 556 U.S. at 679.

When, as here, the plaintiff is proceeding *pro se*, the Court must construe her allegations liberally. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (*per curiam*).   Indeed, a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers..." <u>Id.</u> (citation omitted).   That said, *pro se* litigants "still must comply with procedural and substantive law" and "[d]ismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim." <u>Harihar v. United States Bank Nat'l Ass'n</u>, No. 15-cv-11880-ADB, 2017 U.S. Dist. LEXIS 50596, at *14 (D. Mass. Mar. 31, 2017) (citations omitted).

## IV.  **Factual Background**

Unless otherwise noted, the following facts are taken from Plaintiff's Complaint [ECF No. 1] and the Court accepts them as true for the purposes of resolving Defendants' motion.[6]

---

[6] Although the Court's motion to dismiss inquiry is of course ordinarily limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice, <u>In re Colonial Mortg. Bankers Corp.</u>,324 F.3d 12, 20 (1st Cir. 2003), the Court may and has in this case considered certain documents the authenticity of which are not disputed by the parties, official public records, documents central to Plaintiff's claim, and documents sufficiently referred to in the complaint. <u>Watterson v. Page</u>, 987 F.2d 1, 3-4 (1st Cir. 1993).

A. **The Mortgage and the Mortgaged Property**

In 1996, Benson and her now ex-husband[7] purchased 51 Breakneck Road in Sturbridge, Massachusetts (the "Mortgaged Property"), which in turn became Benson's family home.  [ECF No. 1-1 at 1]. On or about August 18, 2004, Benson and Riopel obtained a $232,200.00 mortgage loan from Wilmington Finance ("Wilmington"), a division of AIG Federal Savings Bank. [ECF No. 19-1 at 1-2]. This is evidenced by a copy of a mortgage (the "Mortgage")[8] that was granted in favor of Wilmington, encumbering the Mortgaged Property, that was recorded with the Worcester County Registry of Deeds (the "Registry") on August 23, 2004, in Book 34428, Page 332. [Id.]

Notably, Paragraph 20 of the Mortgage explicitly authorized transfer of both the mortgage note and loan's servicing obligations, providing, in part:

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) **_can be sold one or more times without prior notice to Borrower_**. A sale

---

[7] An individual named Michael Riopel ("Riopel") -- who is not a party to this action.

[8] Certain of the early mortgage related documents refer to Plaintiff by her prior name, "Tammy L. Riopel" e.g., [id. at 2], but the Court will only use the terms "Plaintiff" or "Benson" when referring to her in this Memorandum and Order.

might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instruments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. ***There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note***. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing...

[Id. at 12-13] (emphasis added)].

### B. Metropolitan Takes Ownership of Benson's Mortgage and Select Portfolio Becomes the Servicer

On March 21, 2014, Metropolitan became the owner of the mortgage note. [ECF No. 1-1 at 1; ECF No. 1-2]. Metropolitan notified Benson of this fact by way of a "Notice of Assignment, Sale or Transfer of Mortgage Loan" letter dated April 18, 2014. [ECF No. 1-2]. That letter informed Benson of at least three critical facts:

1. First, it told her that Metropolitan was the "new owner" of her mortgage loan. [Id. at 1].

7

2. Second, it notified her that "[t]his assignment, sale or transfer ***does not change*** the terms of your loan or your contractual obligations as described in your loan documents..." [Id. at 1. (emphasis added)].

3. Third, the letter also stated that, "[t]he transfer of the lien associated with your mortgage loan ***has not been recorded***, but ***may in the future be recorded*** in the public records of the local county recorder's office for the county where your property is located." [Id. (emphasis added)].

On May 15, 2019, Metropolitan became the Mortgage's record owner. [ECF No. 1-1 at 1–2 ECF No. 19-9]. In accordance with their above-quoted reservation regarding recording, Metropolitan did indeed later record title with the Registry on July 14, 2020. [ECF No. 19-9].

Benson was also notified at least as early as April 11, 2014, that her loan servicer was changing as a result of the Mortgage's change-in-ownership. [ECF No. 1-4]. Whereas her previous servicer had been a firm named Caliber Home Loans, Inc., Caliber sent her a letter explaining that her new servicer would be Select Portfolio. [Id.] Caliber's letter made clear that the change in servicers did "not affect any term or condition" of the Mortgage instruments other than the terms directly related to the servicing of her loan. [Id. at 1]. This letter concluded by informing her that Select Portfolio would start accepting payment from her on

May 1, 2014. [Id.]  Although none of the parties has provided a copy of Select Portfolio's first correspondence to Benson on or about May 2014, Plaintiff alleges [ECF No. 1-1 at 1-2] and Defendants agree [ECF No. 18 at 3] that Select Portfolio began acting as the successor servicer on or about May 1, 2014. As discussed below, however, *what is contested* is whether Select Portfolio had the legal authority to act as the loan servicer beginning on or about that date.

### C. <u>Chain of Assignments</u>

Defendants have explained -- and Plaintiff has not challenged -- that the Mortgage's chain of *recorded* assignments are as follows:

- From Wilmington to CIT Group/Consumer Finance, Inc., via an assignment recorded with the Registry on June 24, 2005, in Book 36631, Page 250. [ECF No. 18 at 9].

- From CIT Group/Consumer Finance, Inc. to U.S. Bank Trust National Association, as Trustee for Bermuda Investments 2011-1 Trust, via an assignment recorded with the Registry on January 6, 2012, in Book 48376, Page 59. [Id.]

- From U.S. Bank Trust National Association, as Trustee for Bermuda Investments 2011-1 Trust to Metropolitan via a Corporate Assignment of Mortgage recorded with the Registry on July 14, 2020, in Book 62794, Page 142. [Id.]

### D. <u>Select Portfolio Offers Benson At Least Three Repayment Plans; Later Initiates Foreclosure Proceedings</u>

Although it is not clear from the parties' filings *exactly when* Benson stopped making timely mortgage payments, all parties agree that Benson went into default *at least* as early as 2017.

[ECF No. 1-1 at 2 (Benson stating that "[i]n 2017," she "lost her Social Security Disability benefits and was out of work at the same time, and, as a result, lost all her forms of income... [rendering her] unable to make her monthly payments on the mortgage...")].

The record reveals that in response to Benson's default status, Select Portfolio offered Benson repayment options on at least three separate occasions between April 2018 and June 2022. [ECF No. 1-6]; [ECF No. 1-7]; [ECF No. 1-8]. Although Plaintiff alleges that she tried to negotiate acceptable modifications at various points, all parties seem to agree that Plaintiff was never able to meet the obligations of these proposed modification offers.

In June 2022, Select Portfolio offered to accept a short payoff of no less than $225,000.00 to satisfy the loan[9] provided that Benson paid this amount by August 19, 2022. [ECF No. 1-8 at 1]. When Benson failed to make the reduced payoff by late August 2022, Select Portfolio wrote to Benson explaining that the offer was withdrawn and that the account would be returned to "normal servicing activities." [ECF No. 1-9 at 1]. Notably, Select Portfolio's letter told Benson that "[w]hile a foreclosure sale is a possible outcome of any unresolved delinquency, [Select

---

[9] The record does not reveal the total amount that was left on the loan when this offer was made, but all parties agree that it was short payoff.

Portfolio] considers foreclosure only as a last resort.  We want to work with you to find a solution to avoid foreclosure." [Id.]

### E. **The Foreclosure Sale**

In February 2023, Metropolitan began to take steps in furtherance of foreclosure.  [ECF No. 18 at 3-4].  On February 7, 2024, a foreclosure sale occurred for the Mortgaged Property.  [ECF No. 21 at 2].  Plaintiff has told the Court that there were no other bidders at the foreclosure sale and that the new owner of the Mortgaged Property is Metropolitan.  [ECF No. 21 at 2-3].

### V.   **Procedural History**

On December 15, 2023, Plaintiff filed the instant suit, which (a) sought a temporary restraining order preventing the foreclosure sale scheduled for January 2, 2024, from occurring in addition to (b) advancing the legal claims addressed in this Memorandum and Order. [ECF No. 1-1 at 3-4].[10]

---

[10] This Court denied Plaintiff's TRO by electronic order. [ECF No. 20].  In considering the Plaintiff's TRO request, the Court considered, (1) the likelihood of the movant to succeed on the merits, (2) whether the movant was likely to suffer irreparable harm in the absence preliminary relief, (3) the balance of equities, and (4) whether an injunction was in the public interest. Voice Of The Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).  While all four factors must be weighed, the moving party's likelihood of success on the merits is "the touchstone of the preliminary injunction inquiry." Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir.1998).

For many of the reasons explained within this Memorandum and Order, the Court's principal reason for denying the TRO motion was because it believed that Plaintiff was unlikely to prevail

Construing Plaintiff's claims liberally, as it must under Erickson, 551 U.S. at 94, the Court has determined that Plaintiff has essentially advanced five species of claims: (1) a challenge to mortgage-related interest and fees that accrued between March 21, 2014 and May 15, 2019 ("Count #1")[11]; (2) a chain of title-based claim ("Count #2"); (3) a TILA claim ("Count #3"); (4) a loss mitigation-based claim ("Count #4"), and a fraud-based claim ("Count #5").

As noted above, the Defendants moves to dismiss for failure to state a claim [ECF No. 17].  Plaintiff opposes this motion [ECF No. 21] and the Defendants have filed a reply [ECF No. 25]. Defendant's motion to dismiss [ECF No. 17] is therefore ready for decision.

---

on the merits.  Since Plaintiff had failed to establish a likelihood of success on the merits of the claims that could arguably have undermined the validity of the impending foreclosure proceeding, Plaintiff failed to carry her burden to show entitlement to a TRO.  Although such a finding "essentially ends the inquiry," the Court also concluded that even if Plaintiff was going to suffer irreparable injury in the absence of a TRO, she did not establish the equities were in her favor or that public policy favored the issuance of a TRO.  See e.g., Adams v. Wells Fargo Bank, N.A., 221 F. Supp. 3d 171, 177-78 (D. Mass. 2016) (denying a TRO motion in the mortgage dispute context where the plaintiff had advanced claims that, among others, attacked the validity of the assignment of the note and mortgage at issue).

[11] For purposes of organization and clarity, the Court has decided to classify each of Plaintiff's six claims into what it will refer to as "Counts" even though Plaintiff did not use this term.

VI.  **The 2014-2019 Interest & Fees Dispute**

    A. **Plaintiff's Claim**

A liberal reading of the Complaint reveals that Count #1 resides within Plaintiff's allegation that:

> [a]s a result of the mortgage transfer not being properly executed from US Bank and Caliber Home Loans to Metropolitan Life and Select Portfolio Servicing, Inc, Metropolitan Life Insurance Company and Select Portfolio Servicing, Inc. ***had no legal right to collect*** the monthly mortgage payments, from March of 2014 to May of 2019...
>
> [ECF No. 1-1 at 2 (emphasis added)].

A second and closely related component of Count #1 is Plaintiff's assertion that Defendants wrongfully assessed "a one-time unexplained fee of $30,000.00 plus dollars" during this challenged time period.  [ECF No. 1-1 at 2].

In essence, Plaintiff is arguing that all interest and fees that accrued between the moment that Metropolitan took ownership of the mortgage (i.e., on March 21, 2014) and the moment that Metropolitan became the *record owner* of the mortgage (i.e., on May 15, 2019) should be deemed void -- seemingly on the basis that Metropolitan's ownership of the mortgage (and, consequently, Select Portfolio's purported servicing of it) was defective and thus illegitimate during this time period.

Whether this argument has merit turns on applicable substantive Massachusetts law and a portion of the Code of Federal Regulations.   Since Plaintiff is alleging that neither Metropolitan nor Select Portfolio had the legal authority to assess interest and fees against her, the Court will deal with each entity separately.

### B. <u>Applicable Substantive Law</u>

Plaintiff's Count #1 case against Metropolitan is controlled by Massachusetts state law and implicates the issue of whether a mortgage and the underlying note can be simultaneously held by different persons.  The Supreme Judicial Court has repeatedly made clear that in Massachusetts, a mortgage and the underlying note *can* travel separately.  <u>See, e.g.</u>, <u>Eaton v. Fannie Mae</u>, 462 Mass. 569, 576 (2012) ("[I]n Massachusetts a mortgage and the underlying note can be split") (citation omitted); <u>Lamson & Co. v. Abrams</u>, 305 Mass. 238, 245 (1940) ("The holder of the mortgage and the holder of the note may be different persons. The interest of anyone in an existing mortgage may be shown by parol -- evidence is not confined to the record title").

Plaintiff's Count #1 case against Select Portfolio is controlled by both a provision contained in the Code of Federal Regulations -- namely, 12 C.F.R. § 1024.33 -- as well as Paragraph 20 of the Mortgage, which is quoted in relevant part *supra*.

That regulation, which governs mortgage servicing transfers, provides that:

> **(1) Requirement for notice.** Except as provided in paragraph (b)(2) of this section, each transferor servicer and transferee servicer of any mortgage loan ***shall provide to the borrower a notice of transfer for any assignment, sale, or transfer of the servicing of the mortgage loan***. The notice must contain the information described in paragraph (b)(4) of this section. Appendix MS-2 of this part contains a model form for the disclosures required under this paragraph (b).

12 C.F.R. § 1024.33 (emphasis added).

## C. Application

With respect to Count #1, Plaintiff has failed to state a claim against Metropolitan. Her argument hinges on her contention that the transfer of the Mortgage to Metropolitan did not take place on March 21, 2014, but in fact, took place on May 15, 2019, when Metropolitan became the record owner. [See ECF No. 1-1 at 2].[12] Plaintiff has not alleged that she was not given timely

---

[12] Implicit in Plaintiff's Count #1 claim is the contention that mortgage assignments must be recorded in order to be valid. As a matter of Massachusetts law, this is not so. See, e.g., Rosa v. Mortg. Elec. Registration Sys., Inc., 821 F. Supp. 2d 423,

notice of this change-in-ownership or that she somehow made payments on the Mortgage to the wrong entity. Instead, her Count #1 claim rises and falls on her theory that Metropolitan was not the rightful owner of the Mortgage during this approximately five-year interim period and therefore had no right to impose interest and fees upon her during that time.

This argument fails as a matter of Massachusetts law. As the SJC has said in Eaton and elsewhere, under Massachusetts law, "a mortgage and the underlying note can be split." See, e.g., Eaton v. Fannie Mae, 462 Mass. at 576. Echoing Eaton, the First Circuit has explained that under Massachusetts law, "mortgagee[s] need not possess any scintilla of a beneficial interest in order to hold [a] mortgage." Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 292-93 (1st Cir. 2013) (citation omitted). Simply stated, just because the note and mortgage were traveling separately during this approximately five-year period does not mean that Metropolitan was not the rightful owner of the mortgage. Accordingly, Plaintiff's Count #1 case against Metropolitan fails

---

430 (D. Mass. 2011) (citing U.S. Bank Nat'l Assoc. v. Ibanez, 941 N.E.2d 40, 53 (Mass. 2011) for the proposition that, "recording the assignment is preferred but not required.")). Plaintiff's contention is also particularly unavailing here since it is undisputed that she received timely, personal notice of the Mortgage's change-in-ownership.  [ECF No. 1-2].

to state a claim and is therefore **DISMISSED**.  See, e.g., Lackie v. Deutsche Bank Nat'l Tr. Co., No. 15-30121-MGM, 2016 U.S. Dist. LEXIS 99634, at *10 (D. Mass. July 29, 2016) ("Plaintiff's breach of contract and declaratory relief claims, insofar as they rely on the erroneous theory that the mortgage and the note may not be split (and that any splitting renders the mortgage void), fail as a matter of law"); Foregger v. Residential Credit Sols., Inc., No. 12-11914-FDS, 2013 U.S. Dist. LEXIS 87546, at *14 (D. Mass. June 21, 2013) (citing Eaton and dismissing a claim premised on the fact that the mortgage and the note had been split).

Turning to Plaintiff's Count #1 case against Select Portfolio, the Court finds as a preliminary matter that she fails to state a claim to the extent that her case against Select Portfolio is dependent on a finding that Metropolitan did not become the mortgage owner on March 21, 2014.

Plaintiff's Count #1 case against Select Portfolio also fails because there appears to have been compliance with the applicable Code of Federal Regulation as well as Paragraph 20 of the Mortgage. Indeed, Plaintiff's Exhibit 3 is a notice letter sent from her prior loan servicer (Caliber) informing her that Select Portfolio would become her successor servicer on May 1, 2014. [ECF No. 1-4].  As noted, no party has provided a copy of Select Portfolio's initial notice letter to Plaintiff, however, Plaintiff does not allege that she never received such a letter -- in fact, the crux

of her argument is that Select Portfolio *did* contact her and acted as her loan servicer despite lacking the legal authority to do so. [See ECF No. 1-1 at 2 ("[i]t must be noted that [Select Portfolio] was servicing the mortgage before the mortgage transfer took place...")].   Select Portfolio also materially complied with Paragraph 20 of the Mortgage's requirements since there is no question that Plaintiff was given the name and address of her new loan servicer.

More fundamentally, though, the Court cannot square Benson's argument that Select Portfolio lacked the legal authority to assess interest and fees during the challenged period when it is undisputed that Benson was engaged in negotiations with Select Portfolio for a temporary repayment plan in April of 2018.[13] Clearly, Benson understood that Select Portfolio had the authority to negotiate loan modifications.  For all of these reasons, Benson has failed to state a claim in Count #1 against Select Portfolio, and it is therefore **DISMISSED**.

With respect to the alleged $30,000 "unexplained fee," the Court finds that Plaintiff has not given the Court anything beyond a "naked assertion" that this amount was invalid and therefore the

---

[13] In fact, Plaintiff has actually conceded she agreed to at least one loan modification arrangement with Select Portfolio. [ECF No. 16 at 7-8].  This modification occurred in 2017.  Id. While not dispositive, this fact further weakens Plaintiff's argument that Select Portfolio lacked the authority to service the loan.

Court does not credit it.  <u>Barricello v. Bank of Am., N.A.</u>, No. 18-10398-LTS, 2019 U.S. Dist. LEXIS 48783, at *6-7 (D. Mass. Mar. 25, 2019) (explaining that "[f]actual allegations that consist merely of 'labels and conclusions' are not credited" at the motion to dismiss stage and that "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient) (citations omitted).  In fact, it is not even clear if this amount was assessed by Metropolitan or by Select Portfolio.  In either case, it has not met the pleading standard and is therefore **DISMISSED**.

**VII.** **Count #2: The Chain of Title Dispute**

    A. **Plaintiff's Claim**

The essence of Count #2 is that Metropolitan does not have a valid chain of title to the Mortgage.  Specifically, Benson has alleged that,

> "[a]s a result of the mortgage transfer ***not being***
> ***properly executed*** from US Bank and Caliber Home Loans to
> Metropolitan Life and [Select Portfolio], Metropolitan
> Life and [Select Portfolio] had no legal right to collect
> the monthly mortgage payments, from March of 2014 to May
> of 2019, or negotiate any loan modifications, service
> the loan, or foreclose on the property before May 15,
> 2019..."

[ECF No. 1-1 at 2 (emphasis added)].

This argument is similar to the one contained in Count #1 but is slightly different as it argues that legal title did not validly pass to Metropolitan from the Mortgage's prior owner, U.S. Bank.

### B. Applicable Substantive Law

Massachusetts state law controls Plaintiff's Count #2 case against Metropolitan.  The threshold question is whether Benson has standing to challenge the assignments that purport to give Metropolitan legal title and authority to conduct its foreclosure sale.  In order to have such standing under Massachusetts law, "a mortgagor must claim the assignment was void and not merely voidable."  Giannasca v. Deutsche Bank Nat'l Tr. Co., 130 N.E.3d 1256, 1259 (2019).  Whether or not a mortgage assignment in Massachusetts was valid or void turns on whether the statutory requirements contained in M.G. L. c. 183, § 54B were met.  Id.

Under this statutory regime, "[i]f the assignment is (1) made by the mortgage holder or its representative, (2) executed before a notary public, and (3) signed by an authorized employee of the mortgage holder, it is effective to pass legal title and '***cannot be shown to be void***.'" Id. at 1259 (emphasis added) (citing Bank of N.Y. Mellon Corp. v. Wain, 11 N.E.3d 633 (2014)). So, the question for this Court is whether Benson has levied sufficient factual allegations to sufficiently claim that one or more of the Mortgage's assignments was void.

### C. **Application**

Upon review of the assignments-at-issue, the Court finds that each link in the chain of assignments that culminated in Metropolitan taking record ownership of the Mortgage were executed in compliance with the statutory requirements contained in M.G. L. c. 183, § 54B and were thus presumptively valid. [See ECF No. 18 at 8-9 (Defendants detailing the three assignments at-issue)]; [ECF No. 19-2]; [ECF No. 19-3]; [ECF No. 19-9].   Neither Plaintiff's Complaint [ECF No. 1] nor her opposition to Defendants' motion to dismiss [ECF No. 21] contain any allegations plausibly challenging the validity of the various assignments.   Accordingly, Plaintiff lacks standing to challenge the mortgage assignments. See, e.g., Wilson v. HSBC Mortg. Servs., 744 F.3d 1, 14 (1st Cir. 2014) (affirming a district court's conclusion that plaintiffs lacked standing to challenge a mortgage assignment and stating that "[a]fter consideration of the entire record, we find that the [plaintiffs] have not alleged any facts which, if proven, would lead to a finding that the 2009 Assignment was void.") For all of these reasons, Plaintiff's Count 2 claims are **DIMISSED** as to both Defendants.

### VIII.   **Count #3: The TILA Claim**

### A. **Plaintiff's Claim**

Liberally construed, Plaintiff's TILA claim alleges that the Defendants violated this federal statute by "misrepresent[ing]"

that the Mortgage had been transferred to Metropolitan in 2014 when the transfer had actually occurred, in Plaintiff's telling, in 2019.  [ECF No. 1-1 at 1].  Plaintiff does not offer any specifics as to which alleged "misrepresention[s]" are at issue -- but she seems to suggest that the Defendants intentionally misstated the date that the Mortgage transferred to Metropolitan in their various notice letters -- such as the 2014 letters that Metropolitan sent to Plaintiff notifying her about the change in Mortgage ownership.  [ECF No. 1-1].  Nothing in Plaintiff's filings or elsewhere in the record suggests that she ever attempted to exercise her right of recission under TILA.  See, e.g., McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 211 (1st Cir. 2012) (noting that TILA "gives homeowners a right to rescind certain credit transactions") (citing to 15 U.S.C. § 1635(a)).

Plaintiff does not identify what provision or provisions of TILA that Defendants allegedly violated, which makes it difficult for the Court to further assess the merits of Plaintiff's TILA claim.  However, for reasons explained below, the Court need not and will not reach the merits of Count #3 because it finds that any such TILA claim is time-barred.

### B. TILA's Statutes of Limitations

For damages actions such as this one, the statute of limitations to bring a claim under TILA is "one year from the date of the occurrence of the violation" for damages actions.  15 U.S.C.

§ 1640(e); <u>Lai Chan v. Saxon Mortg. Serv.</u>, No. 09-11265-JGD, 2010 U.S. Dist. LEXIS 160822, at *21 (D. Mass. Jan. 11, 2010) (explaining that "TILA contains two statutes of limitations, a one-year statute for damage claims, and a three year statute for rescission actions" (citing 15 U.S.C. §§ 1635(f), 1640(e)).

### C. **Application**

Count #3 is clearly time-barred.  Since this is a damages action, TILA's one-year statute of limitations applies. 15 U.S.C. § 1640(e).  It is undisputed that Plaintiff was notified that Select Portfolio was the successor servicer on April 18, 2014 [ECF 1-2].  It is also undisputed that Metropolitan became the Mortgage's record holder on July 14, 2020.  [ECF No. 19-9].  So, regardless of whether Plaintiff's claim can be said to have arisen in 2014 when the allegedly invalid transfer of the Mortgage took place or in 2020 when Metropolitan became the record owner of the Mortgage, Plaintiff's claim -- which is one for damages [ECF No. 1-1 at 3-4] -- is time-barred.  <u>See</u> 15 U.S.C. § 1640(e). Accordingly, the TILA claim is time-barred as to both Metropolitan and Select Portfolio and Count #3 is therefore **DISMISSED**.

## IX.   **Count #4: The Loss Mitigation Claim**

### A. **Plaintiff's Claim**

Plaintiff has also alleged in general terms that the Defendants had a legal obligation to offer additional loss mitigation arrangements, including in 2018 and again in 2022 [ECF

No. 1-1 at 2-3].  For example, Plaintiff argues that Defendants wrongfully denied her "more time" to satisfy the short payoff offer that had been extended to her in June 2022.  [Id. at 3].

### B. Applicable Substantive Law

Under Massachusetts law, "'absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults...'"  See, e.g., Mackenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491 (1st Cir. 2013) (citation omitted).  Relatedly, neither the covenant of good faith and fair dealing nor the duties arising from foreclosure "extend to preforeclosure loan modification processing where the mortgage loan documents do not themselves contemplate such modifications." Santos v. U.S. Bank Nat'l Ass'n, 54 N.E.3d 548, 560 (2016) (citations omitted).

### C. Application

Applying this legal standard, the first question becomes whether the Mortgage contained any requirement for Metropolitan to offer preforeclosure loss mitigation options in the event of default.  The Court's review of that document reveals that it does not contain any such provision.  See [ECF No. 19-1]. Similarly, there is no evidence from which the Court could conclude that Select Portfolio had any independent contractual obligation to provide such options.  Nevertheless, the record reveals that Select Portfolio made at least three loss mitigation overtures; none of

which were sufficiently accepted by Plaintiff.   [ECF No. 18 at
12].   Accordingly, Plaintiff has failed to state a claim relative
to Count #4 and it is therefore **DISMISSED** as to both Defendants.

### X.   Count #5: The Fraud Based Claim

#### A. Plaintiff's Claim

In her Complaint [ECF No. 1] and again in her opposition to
the motion to dismiss [ECF No. 21], Plaintiff generally alludes to
the notion that Defendants made "false misrepresentation[s]" when
"they notified Plaintiff of the transfer of the mortgage and the
mortgage service provider and when the transfers actually did take
place..." [ECF No. 21 at 1-2].   Liberally construed, these
allegations point towards a claim of fraud.

#### B. Applicable Substantive Law

Under Fed. R. Civ. P. 9(b), "allegations of fraud are held to
a higher pleading standard" and in order to "survive a motion to
dismiss, a complaint alleging fraud must '***state with particularity***
the circumstances constituting fraud'" United States v. Teva
Pharms. USA, Inc., 560 F. Supp. 3d 412, 418 (D. Mass. 2021)
(emphasis added) (citing Fed. R. Civ. P. 9(b)).   Under
Massachusetts law, a plaintiff alleging common law fraud must show
that a defendant "made a false representation of a material fact
with knowledge of its falsity for the purpose of inducing the
plaintiff to act thereon, and that the plaintiff reasonably relied
upon the representation as true and acted upon it to his damage."

See, e.g., <u>Russell v. Cooley Dickinson Hosp., Inc.</u>, 772 N.E.2d 1054, 1066 (2002) (citations omitted).

### C. <u>Application</u>

Here, Plaintiff has not provided the Court with anything to suggest that the Defendants are liable for common law fraud under Massachusetts law. The Court is left to guess what the purported "misrepresentation[s]" might be -- and therefore Plaintiff's allegations are not nearly sufficient to satisfy Rule 9(b)'s heightened pleading standard. Accordingly, Count #5 is **<u>DISMISSED</u>** as to both Defendants.

### XI. <u>Conclusion</u>

For all of the foregoing reasons, the Defendant's motion [ECF No. 17] to dismiss is **<u>GRANTED</u>**.

**SO ORDERED.**

Dated: September 18, 2024

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge
